Ronnie DeWitt ALLEN and J. H. Marks
Trucking Company, Inc., Appellants,

v.

Louis KNIPPA, Sr., Individually and as
next friend of his minor son, Dennis
Knippa, Appellees.

No. 1195.

Court of Civil Appeals of Texas,
Corpus Christi.

May 12, 1977.

Rehearing Denied June 23, 1977.

Harry F. Maddin, Maddin, White & Brin, Corpus Christi, for appellants.

Joseph A. Cohn, Jr., Nicolas & Morris, William R. Edwards, Law Offices of William R. Edwards, Corpus Christi, for appellees.

## OPINION

BISSETT, Justice.

This is a venue case. Suit was filed in San Patricio County, Texas, by Louis Knippa, Sr., individually and as next friend of his minor son, Dennis Knippa, for injuries sustained by the minor when the motorcycle then being ridden by him collided with a truck-semi-trailer combination (truck-trailer) owned by the defendant Jimmy Allen, operated by the defendant Ronnie DeWitt Allen, and under lease to the defendant J. H. Marks Trucking Company, Inc. Jimmy Allen was nonsuited. Pleas of privilege were filed by the defendants Ronnie DeWitt Allen and J. H. Marks Trucking Company, Inc. The plaintiffs controverted the pleas and sought to maintain venue in San Patricio County, Texas under Tex.Rev.Civ. Stat.Ann. art. 1995, §§ 9a, 23 and 29 (1964). The pleas of privilege were overruled. The defendants have appealed.

It was stipulated that at all times in question: Louis Knippa, Sr. and Dennis Knippa (Dennis) were residents of San Patricio County, Texas; Ronnie DeWitt Allen (Allen) was a resident of Midland County, Texas; J. H. Marks Trucking Company, Inc. (Marks) is a Texas Corporation and was a resident of Ector County, Texas; at and immediately prior to the occurrence of the accident or collision upon which this suit is based, Allen was an employee of Marks, and was acting within the scope of his employment at the time and place of the accident.

■ It being undisputed that Allen was an employee of Marks and that he was acting within the scope of his employment at the time of the occurrence in question, the remaining venue facts under Tex.Rev. Civ.Stat.Ann. art. 1995, § 9a (1964) which plaintiffs were required to prove in order to maintain venue in San Patricio County, Texas, were: 1) that Allen was guilty of an act of negligence which occurred in San Patricio County, Texas; and 2) that such act was a proximate cause of the accident. *Mobil Oil Co. v Dodd,* 515 S.W.2d 351 (Tex. Civ.App.—Corpus Christi 1974, no writ); *Calhoun v. Padgett,* 409 S.W.2d 890 (Tex. Civ.App.—Tyler 1966, no writ; *Shelburne v. Christie-Hickman Drilling Company,* 295 S.W.2d 476 (Tex.Civ.App.—Amarillo 1956, no writ).

■ Venue facts must be proved by a preponderance of the evidence. *Banks v. Collins,* 152 Tex. 265, 257 S.W.2d 97 (1953). The occurrence of a collision between two motor vehicles is not of itself evidence of negligence. *Rankin v. Nash-Texas Co.,* 129 Tex. 396, 105 S.W.2d 195 (Tex.Comm'n App. 1937, opinion adopted). Venue cannot be established by implication. *Burtis v. Butler Bros.,* 148 Tex. 543, 226 S.W.2d 825 (1950). Failure to perform a duty required by law is never presumed as a fact, but must be proved by competent evidence of probative value. *Jones v. Nafco Oil and Gas, Inc.,* 380 S.W.2d 570 (Tex.Sup.1964). Proof of acts constituting negligence may be made by circumstantial evidence. *Big Three Welding Equipment Company v. Reeh,* 301 S.W.2d 504 (Tex.Civ.App.—San Antonio

1957, no writ); *Williams v. Rearick,* 218 S.W.2d 225 (Tex.Civ.App.—Amarillo 1949, no writ).

The accident in question occurred on January 22, 1975, at about 6:20 p. m., in the corporate limits of the City of Ingleside, San Patricio County, Texas, when Dennis, while riding a motorcycle, ran into the rear of defendants' truck-trailer which was then parked on a portion of the outside southbound lane of Highway 1069. It had been raining most, if not all, of the day, and was misting rain at the time of the collision. Allen testified that it was "just getting dark" at that time; all of the other witnesses testified that it was "dark" at that time. It was stipulated that "the official sundown on January 22, 1975, was at 6:02 p. m."

Allen testified that he had been driving in misty rain for about two hours when he parked his truck on Highway 1069 in Ingleside. All of the lights on his truck-trailer were in working order, and he had been driving with his lights on up until the time he stopped, when he cut all lights off. He did not see the collision. After the accident occurred, he turned his "emergency flashers on." The rear of the trailer was equipped with two reflectors. He also carried fuses and reflectors in the truck but did not put them out when he parked the truck-trailer.

Dennis was rendered unconscious as a result of the collision and did not regain consciousness until several days afterwards. He testified that for some fifteen or twenty minutes before the accident he had been in a service station that was about a block away from the point of impact; that it was misting rain; and that it was dark at the time. He further testified that he turned the headlight of his motorcycle on when he left the station. He did not remember anything after he got "on the roadway."

Donald Hahn, who was in a vehicle which was stopped at an intersection near the scene where the accident occurred, testified that he saw Dennis "out on the highway, coming down the road" in the right-hand lane "closest to the curb"; that "it was real dark"; that both he and Dennis had their headlights on; and that as Dennis passed

the intersection where he (Donald) was waiting, he "saw the tail-light of Dennis' bike." He then turned onto the highway and proceeded in the direction that Dennis had been travelling. He came up to the scene of the accident and saw "Dennis laying down on the ground, partly straddling his bike." He was asked if he saw the truck when he turned on to the highway. He answered:

"I didn't notice the truck right off until I got right up on it pretty close."

He was not an eye-witness to the collision itself.

Mr. Allen W. Elledge, a patrolman for the City of Ingleside, who arrived at the scene of the collision within five minutes after the happening of the occurrence, investigated the accident. He said that "it had been raining heavily" but at the time of his arrival "it was a slight drizzle," and "it was dark." It was established by his testimony (which was not disputed) that the southbound portion of the highway consisted of thirty-two feet of pavement between the center stripe and the edge of the roadway; the southbound portion was divided into two lanes; the center lane is twelve feet wide and the outside lane (curb lane) is twenty feet in width. He found the truck parked in the outside lane; it did not have any lights burning at that time. Several photographs which were taken at the scene shortly after the collision occurred were introduced in evidence. Those photographs and Elledge's testimony show that the truck-trailer was parked in the outside lane near the edge of the pavement, and all of the rear wheels of the trailer were on the pavement. Such evidence further shows that part of the cargo in the truck-trailer consisted of some seven or eight cylinders with tubes on one end. These tubes protruded out from the rear edge of the bed of the trailer. Elledge testified that the protrusion of the tubes was less than 3 feet. This is the only evidence with reference to such protrusion. There were no red signal lamps or red signal flags affixed to any of the tubes. Elledge, in response to the inquiry "how far could you see with your headlights on, objects in the road ahead of you, at 6:26," replied:

"Between seventy-five to a hundred feet at the time."

The trial court filed fifty-four findings of fact. The defendants, in twenty-five points of error, attack several of those findings on the grounds that there is "no evidence" to support the particular findings, and in the alternative, that the findings "are against the great weight and preponderance of the evidence" as to be clearly wrong. All of the defendants' points deal with some act or omission by Allen which the trial court found was the result of his failure to warn motorists approaching the rear of his parked truck-trailer of the presence of his vehicle on a portion of the improved roadway. We have reviewed, considered and weighed all of the evidence in accordance with the well established rules which govern the disposition of "no evidence" and "against the great weight and preponderance of the evidence" points.

Tex.Rev.Civ.Stat.Ann. art. 6701d, § 120 (1977), among other provisions, provides that at any time from a half hour after sunset to a half hour before sunrise, subject to certain exceptions that are not here pertinent, red lamps and red reflectors shall be displayed at the extreme rear end of the load on the vehicle where the load extends "four (4) feet or more beyond the bed or body of such vehicle." The trial court found that the failure to mark the tubes which protruded from the rear end of the truck was in violation of Section 120, which constituted negligence per se and common law negligence, and which was a proximate cause of the accident. We agree with the defendants in their contention that there is no evidence to support those particular findings. It is undisputed that the tubes protruded less than three feet from the rear edge of the trailer. There was no violation of Section 120. There is no evidence that will support a finding that the conditions present required an ordinary prudent person to display any flag, light or device on the end of the tubes. Points 1, 2 and 3 are sustained.

Points 4 to 9 deal with reflectors located on the rear of the trailer. The trial court found that the reflectors were in such condition that they failed to give adequate warning of the presence of the truck-trailer on the highway to Dennis, and that they did not comply with the requirements for equipment under Tex.Rev.Civ.Stat.Ann. art. 6701d, § 112 (1977).

The only evidence which relates in any way to the findings concerning the reflectors is found in the testimony of Elledge when he was asked to comment on two photographs, which were marked plaintiffs' exhibits "P–4" and "P–5." Concerning "P–5," a closeup black and white photograph of the back of the trailer, the questions asked of Elledge and his answers thereto were:

"Q All right. Now, with regard to the taillights shown, do they depict the taillights or reflectors or whatever they are, as they were at the time of the collision?

A Yes, sir, it does.

Q What was the condition of those taillights insofar as road film was concerned?

A Okay. As for the—by the picture it shows road film on it. At the actual time of the accident I can't recall, you know, from memory myself."

Elledge was then handed plaintiffs' exhibit P–4, which was also a picture of the back of the trailer. He testified in response to questions asked him, as follows:

"Q And what are these white-appearing things in the picture on either side?

A Reflectors, I believe.

Q All right. It appears that they are reflecting the light from whatever source was used to take this picture.

A That's right."

An examination of exhibits "P–4" and "P–5" clearly shows that the trailer was equipped with the proper reflectors as required by Section 112 of the statute. There is no evidence which will support even an inference that the reflectors did not meet the standard imposed by Section 112. Elledge's testimony does not constitute any evidence of probative value that supports the challenged findings. "P–5" does not itself establish that the reflectors did not give adequate warning of the presence of defendants' vehicle on the road. Elledge did not qualify as an expert in the field of photography or in interpreting photographs. His answer "the picture it shows a road film on it" was limited in extent to the taillights, and did not encompass the reflectors. Furthermore, Elledge's answers were an opinion and nothing more. Points 4 to 9, both inclusive, are sustained.

Some of the findings of fact are not attacked by a point of error. Included therein are the findings:

"11. At the time and place in question, the weather was cloudy and raining lightly.

12. At the time of the collision it was dark out.

13. At the time of the collision the truck-semi-trailer combination in question had no lighted lights."

\* \* \* \* \* \*

"15. At the time and place in question, because of darkness, cloud cover and rain, persons and vehicles on the highway were not clearly discernible at a distance of 1000 feet ahead."

\* \* \* \* \* \*

"29. At the time and place in question, the unlighted truck-semi-trailer combination was parked on the roadway, that is, on a portion of the highway improved, designed and usually used for vehicular traffic."

There are other findings of fact, which, though challenged, do have support in the evidence. They are summarized, as follows:

1. The truck-trailer failed to have any lights or other visible signals to apprise the driver of a vehicle approaching it from the rear of its presence and position on the street before reaching too close to avoid striking it, which was negligence that proximately caused the occurrence in question;

2. In parking the truck-trailer on the roadway and extinguishing all lights

thereon, under the circumstances then existing, Allen posed a source of danger to other motorists on the highway, which constituted negligence that proximately caused the accident;

3. Allen's failure to flag or otherwise warn oncoming traffic of the presence of the truck-trailer on the roadway, was negligence that proximately caused the collision;

4. The failure of Allen, upon stopping the truck-trailer at the time and place in question, to immediately actuate vehicular hazard warning signal lamps which met the requirements of Tex.Rev.Civ. Stat.Ann. art. 6701d, § 125 (1977) was in violation of Section 138 of said statute, constituted negligence per se and common law negligence, each of which was a proximate cause of the accident;

5. Allen's failure to display tail lamps which emitted a red light plainly visible from a distance of one thousand feet to the rear at a time, when, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway were not clearly discernible at a distance of one thousand feet, was in violation of Tex.Rev.Civ.Stat.Ann. art. 6701d, §§ 109 and 111 (1977), constituted negligence per se and common law negligence, each of which was a proximate cause of the collision.

■ It is undisputed that Allen had been driving with his lights on just preceding the accident, and that he turned all lights off when he parked his truck-trailer and did not put out any flares, reflectors, flags or anything which would warn approaching motor traffic of the presence of the parked vehicle on a paved portion of the highway. It is further undisputed that Allen parked in an area, though not prohibited, was not commonly used for parking. It is also undisputed that it had been raining "heavily" during the day and was misting at the moment of impact. It was dark at the time in question. The testimony of Hahn and that of Elledge will support the findings of common law negligence, i. e., that the failure of Allen to have lights or other visible signals to the rear of the truck-trailer to apprise approaching vehicular traffic from the rear of the vehicle's presence on the roadway was negligence; that in parking the truck-trailer on the roadway and extinguishing all lights thereon was negligence under the circumstances then existing; and the failure to flag or otherwise warn oncoming traffic of the truck-trailer's presence on the roadway was negligence. Such testimony also lends support to the findings that each of the aforesaid failures or omissions were a proximate cause of the accident.

■ We hold that under the facts here presented, Allen, the driver of the truck-trailer, created a dangerous condition when he parked his vehicle on the pavement of Highway 1069 and extinguished all lights, headlights and tail-lights on the truck-trailer. He was under a duty to warn motorists who might approach the parked truck-trailer from the rear of the presence of the vehicle on the roadway and an ordinary prudent person in the exercise of ordinary care should have foreseen that in the absence of such a warning a collision, such as the one that did occur, might occur. See *Lofton v. Norman,* 508 S.W.2d 915 (Tex.Civ. App.—Corpus Christi 1974, writ ref'd n. r. e.); *Rodgerson v. LaFollette,* 424 S.W.2d 280 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n. r. e.).

Tex.Rev.Civ.Stat.Ann. art. 6701d, §§ 109 and 111 (1977), provides that every vehicle upon a highway in this State between a half hour after sunset and a half hour before sunrise and at any other time when due to insufficient light or unfavorable atmospheric conditions, persons and vehicles are not clearly discernible at a distance of one thousand feet ahead shall display lighted lamps and illuminating devices, subject to certain exceptions that do not apply to the case at bar. Clearly under the evidence, the insufficient light and unfavorable atmospheric conditions made it mandatory that Allen display lighted lamps or illuminating devices upon his parking the truck-trailer upon Highway 1069. The testimony of Hahn and that of Elledge shows

that the truck-trailer was not clearly discernible for a distance of one thousand feet. Such failure was a violation of a statutory standard and constituted negligence per se.

Tex.Rev.Civ.Stat.Ann. art. 6701d, § 138 (1977), insofar as it is pertinent to this case, provides:

"(a) Whenever any truck . . . trailer . . . is stopped upon a roadway or adjacent shoulder, the driver shall immediately actuate vehicular hazard warning signal lamps . . . Such lights need not be displayed by a vehicle parked lawfully in an urban district, . . ."

The term "urban district" is defined in Tex. Rev.Civ.Stat.Ann. art. 6701d, § 9(d) (1977), as follows:

"(d) Urban District. The territory contiguous to and including any highway or street which is built up with structures devoted to business, industry or dwelling houses situated at intervals of less than one hundred (100) feet for a distance of one-quarter (¼) of a mile or more on either side *except in incorporated cities.*" Emphasis supplied)

The undisputed evidence in this case is that Allen parked the truck-trailer in the city limits of Ingleside, and that Ingleside is an incorporated city. Even though there was no restriction against parking the vehicle in the place that it parked, as a matter of law it was not parked in an *urban district* as that term is defined in the statute. There is neither direct nor circumstantial evidence that will support the defendants' contention that the vehicle was parked in an urban district.

The failure of Allen to actuate the hazard lamps when he parked the truck-trailer was a violation of Section 138(a) of the statute, which constituted negligence per se. See *East Texas Motor Freight Lines v. Loftis,* 148 Tex. 242, 223 S.W.2d 613 (1949).

There is ample evidence to support the findings that Allen failed to display lighted lamps or other visible signals that would have given a warning to vehicles approaching the rear of the parked truck-trailer of its presence on the roadway; that the parking of the truck-trailer on the roadway and the extinguishing of all lights thereon posed a source of danger to overtaking motorists; and that Allen failed to flag or otherwise warn the drivers of vehicles that the truck-trailer was parked on the highway; that such omissions constituted common law negligence; and that Allen's omissions also constituted statutory violations which amounted to negligence per se. It is established by the evidence that the defendant Allen committed acts of negligence in San Patricio County, Texas, and that such acts were each a proximate cause of the accident in question. Those findings are not against the great weight and preponderance of the evidence. The trial court properly concluded that the plaintiffs alleged and proved a cause of action against the defendants Allen and Marks under Tex.Rev.Civ.Stat.Ann. art. 1995, § 9a (1964). Venue as to the defendants is maintainable in San Patricio County, Texas. Points 10 to 25, both inclusive, being all of the defendants' remaining points of error, are overruled.

The judgment of the trial court is AFFIRMED.